## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Bankruptcy Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | Adv. Pro. No. 23-50411 (JTD) |
| MICHAEL KIVES, *et al.*, | |
| Petitioners, | |
| v. | Civil Action No. 23-cv-00915 (GBW) |
| ALAMEDA RESEARCH LTD., *et al.*, | |
| Respondents. | |

## DEBTORS' OBJECTION TO K5 DEFENDANTS'
## MOTION TO WITHDRAW THE REFERENCE

---

[1]  The last four digits of FTX Trading Ltd.'s tax identification number are 3288.  Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

## TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................3

    A.    The K5 Defendants Accept the Fraudulent and Preferential Transfers .................3

    B.    The Debtors File for Bankruptcy and Former Insiders Are Prosecuted .................4

    C.    The Debtors File This Adversary Proceeding...........................................................5

LEGAL STANDARD ...............................................................................................................6

ARGUMENT ............................................................................................................................7

I.    THE ADVERSARY PROCEEDING INVOLVES CORE CLAIMS THAT
    SHOULD BE LITIGATED IN THE BANKRUPTCY COURT ...................................7

    A.    The Debtors' Fraudulent and Preferential Transfer Claims Are
        Quintessential Core Claims on Which the Bankruptcy Court May Enter a
        Final Judgment........................................................................................................7

    B.    The Debtors' Two Non-Fraudulent Transfer, Non-Preference Claims
        Should Also Be Adjudicated in the Bankruptcy Court...........................................12

II.    THE K5 DEFENDANTS' DEMAND FOR JURY TRIAL DOES NOT
    ESTABLISH CAUSE TO WITHDRAW THE REFERENCE ...................................13

III.    THE *PRUITT* FACTORS DO NOT SUPPORT WITHDRAWAL OF THE
    REFERENCE..............................................................................................................16

    A.    Withdrawing the Reference Will Not Promote Uniformity in the
        Administration of the Chapter 11 Cases ...............................................................17

    B.    Withdrawing the Reference Would Encourage Forum Shopping .........................18

    C.    Withdrawing the Reference Would Waste the Debtors' and Creditors'
        Resources ...............................................................................................................18

    D.    Adjudicating the Adversary Proceedings in the Bankruptcy Court Will
        Expedite the Bankruptcy Process..........................................................................19

CONCLUSION ......................................................................................................................20

## TABLE OF AUTHORITIES

### Cases

*Page(s)*

*In re AgFeed USA, LLC,*
   565 B.R. 556 (D. Del. 2016)........................................................................3, 16, 19

*In re Am. Bus. Fin. Servs., Inc.,*
   457 B.R. 314 (Bankr. D. Del. July 28, 2011) ........................................................12

*In re Am. Classic Voyages Co.,*
   337 B.R. 509 (D. Del. 2006).................................................................................13, 16

*In re Appleseed's Intermediate Holdings.,*
   2011 WL 6293251 (D. Del. Dec. 15, 2011) ........................................................20

*In re Circle of Yoakum,*
   2006 WL 2347710 (D. Del. June 23, 2006)....................................................15, 8, 19

*Seitz* v. *Rothermel,*
   2022 B.R. 846 (E.D. Pa. 2022) ............................................................................18

*In re DBSI, Inc.,*
   467 B.R. 767 (Bankr. D. Del. 2012) ...................................................................8, 11

*In re Direct Response Media, Inc.,*
   466 B.R. 626 (Bankr. D. Del. 2012) ...............................................................8, 911 2

*In re Elk Petroleum, Inc.,*
   2022 WL 4355285 (D. Del. Sept. 20, 2022)..................................................13, 17, 19

*In re Enron Corp.,*
   317 B.R. 232 (S.D.N.Y. 2004)..............................................................................14

*Exec. Benefits Ins. Agency* v. *Arkison,*
   573 U.S. 25 (2014)............................................................................................11, 12

*In re Formica Corp.,*
   305 B.R. 147 (S.D.N.Y. 2004)..............................................................................18

*Granfinanciera, S.A.* v. *Nordberg,*
   492 U.S. 33 (1989)................................................................................................9

*Hatzel & Buehler, Inc.* v. *Cent. Hudson Gas & Elec.,*
   106 B.R. 367 (D. Del. 1989)................................................................................12

*In re Homeland Stores, Inc.,*
   204 B.R. 427 (D. Del. 1997)................................................................................18

*In re Liberty State Benefits of Del. Inc.*,
    2015 WL 1137591 (D. Del. Mar. 12, 2015) ............................................................17, 18

*In re LTC Holdings, Inc.*,
    2019 WL 4643801 (D. Del. Sept. 24, 2019)...........................................13, 14, 15, 19

*In re Nortel Networks, Inc.*,
    539 B.R. 704 (D. Del. 2015) ...................................................................................16

*In re Paragon Offshore PLC*,
    598 B.R. 761 (Bankr. D. Del. 2019) ....................................................8, 9, 10, 11

*In re Pruitt*,
    910 F.2d 1160 (3d Cir. 1990)............................................................................2, 6, 20

*Stern* v. *Marshall*,
    564 U.S. 462 (2011)......................................................................................9, 10, 11, 20

*In re Tribune Media Co.*,
    902 F.3d 384 (3d Cir. 2018)...........................................................................20

*In re TZEW Holdco LLC*,
    2023 WL 2663047 (D. Del. Mar. 28, 2023) .................................................. *passim*

*In re UD Dissolution Corp.*,
    629 B.R. 11 (Bankr. D. Del. 2021) ........................................................................12

*In re USA Floral Prods., Inc.*,
    2005 WL 3657096 (D. Del. July 1, 2005) ............................................................16

## Statute

28 U.S.C. § 157....................................................................................................... *passim*

## Standing Order

Amended Standing Order of Reference (D. Del. Feb. 29, 2012).........................................2, 6, 11

Plaintiffs Alameda Research Ltd. and Clifton Bay Investments LLC f/k/a Alameda Research Ventures LLC (together, the "Plaintiffs" or the "Debtors") respectfully submit this opposition to the *K5 Defendants' Motion to Withdraw the Reference* [D.I. 1] (the "Motion") filed by Petitioners Michael Kives; Bryan Baum; K5 Global Holdings, LLC ("K5 Global"); K5 Global Technology, LLC; MBK Capital LP - Series T; K5 Global Growth Co-Invest I GP, LLC; K5 Global Growth Fund I GP, LLC; K5 Global Ventures, LLC; Mount Olympus Capital, LP; Mount Olympus Capital, LLC; K5 Global Growth Fund II, LP; K5 Global Growth Fund II GP, LLC; K5X Fund I, LP; and K5X Fund I, LLC (collectively, the "K5 Defendants") on August 18, 2023. In support of this opposition, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

The Motion is an attempt by the K5 Defendants to frustrate the orderly process of the bankruptcy proceedings pending before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and to undermine and avoid the authority of that court. By their Motion, the K5 Defendants seek to withdraw from the Bankruptcy Court the above-captioned adversary proceeding (the "Adversary Proceeding")—immediately and for all purposes—despite the preliminary stage of the case. The K5 Defendants assert that immediate withdrawal is necessary because—at some unspecified point in the future—the Adversary Proceeding may proceed to trial, and, they argue, the Bankruptcy Court lacks authority to conduct a jury trial or to enter final judgment.

The K5 Defendants' Motion puts the cart before the horse. There is a "presumption" in this District "that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court," and, to overcome that presumption, it is the K5 Defendants' burden to "prove that cause exists to withdraw the reference." *In re TZEW Holdco LLC*, 2023 WL 2663047, at *2

(D. Del. Mar. 28, 2023) (Williams, J.) (citations omitted).  The K5 Defendants fail utterly to meet their burden under the law of this Circuit.

   *First*, contrary to the K5 Defendants' position, the Debtors' claims are "core claims" that the Bankruptcy Court has authority to finally adjudicate.  And even if that were not the case, it is undisputed that the Bankruptcy Court has authority to "hear the proceeding and submit proposed findings of fact and conclusions of law to the district court."  Am. Standing Order of Reference (D. Del. Feb. 29, 2012) (C.J. Sleet).

   *Second*, ample case law in this District holds that even where a right to a jury trial exists, "[w]ithdrawal of the reference . . . should be deferred until the case is 'trial ready.'"  *In re TZEW Holdco LLC*, 2023 WL 2663047, at *2 (quoting *In re Big V Holding Corp.*, 2002 WL 1482392, at *5 (D. Del. July 11, 2002)).

   *Third*, the K5 Defendants fail to establish why withdrawal at this preliminary stage serves any of the interests articulated by the Third Circuit in *In re Pruitt*.  910 F.2d 1160, 1171 (3d Cir. 1990).  Indeed, the very opposite is true.

   It is by now a matter of public record that the individuals who ran the FTX Group (referred to in the Complaint as the "<u>FTX Insiders</u>") operated a wide-ranging and complex scheme to misappropriate FTX Group assets for, among other things, private homes and jets, political and "charitable" contributions, and various investments.  These investments included the transfers at issue here, in which Defendants Kives and Baum persuaded the FTX Insiders to invest $700 million of misappropriated funds in ventures that were headquartered in Baum's parents' home, and whose values were wildly inflated.  The Bankruptcy Court has committed substantial time and effort to overseeing the Debtors' Chapter 11 proceeding, which includes various other adversary

proceedings.  There is no reason to divest it of its authority to adjudicate this one—particularly now.

The proper time (if any) for the Court to consider whether to withdraw the reference is when the Adversary Proceeding is ready for trial.  In the meantime, this Court's and the Debtors' resources will be conserved by allowing the Bankruptcy Court to continue to hear and dispose of all pretrial issues.  The K5 Defendants have filed with the Bankruptcy Court a 42-page motion to dismiss the Adversary Proceeding and a separate Motion to Stay the Adversary Proceeding pending the Bankruptcy Court's confirmation of the Debtors' Chapter 11 Plan of Organization. The Bankruptcy Court is familiar with the parties and the issues and well positioned to hear and decide these motions.

## BACKGROUND

**A.      The K5 Defendants Accept the Fraudulent and Preferential Transfers.**

From March 2022 through September 2022, the K5 Defendants received $700 million in funds belonging to the Debtors.  Those fraudulent transfers were precipitated by a February 2022 dinner party hosted by Defendant Kives and attended by a number of high-profile individuals and Samuel Bankman-Fried, co-founder of Debtor FTX Trading, Ltd. ("FTX") and majority owner of the Debtors.  After the party, Bankman-Fried wrote that Defendants Kives and Baum could provide "infinite connections," "[p]otential unpaid partnerships with celebrities," and "[p]olitical relationships," and could "work[] together" with Bankman-Fried "on electoral politics."  (Compl. ¶ 2.)

Within three short weeks of that party, on March 8, 2022, Bankman-Fried caused Plaintiff-Debtor Alameda Research Ltd. ("Alameda") to transfer $300 million to Defendant K5 Global, via Plaintiff-Debtor Alameda Research Ventures LLC, in exchange for providing

Defendant SGN Albany Capital LLC[2] with a one-third interest in certain K5 Defendants (the "K5 Transaction").   (Compl. ¶¶ 3-4, 62, 67.)   Then, between May 2022 and September 2022, Bankman-Fried caused Alameda to transfer an additional $400 million to Defendant Mount Olympus, which was later transferred to Defendants K5X Fund I LP and K5 Global Growth Fund II LP (the "Mount Olympus Transaction").   (Compl. ¶¶ 86, 89.)   Bankman-Fried made no effort to conduct *any* due diligence in connection with these transactions, which would have discovered that the valuations implied by the investments in the K5 Defendants were grossly inflated. (Compl. ¶¶ 5, 71, 75, 78.)   As a result, the Debtors did not receive reasonably equivalent value in exchange for the K5 and Mount Olympus Transactions.   (Compl. ¶¶ 81, 91.)   Instead, the transactions accrued to the benefit of Defendants Kives and Baum, who personally received from Debtors $125 million *each* (Compl. ¶¶ 3, 7, 50) and $450 million more to do with as they pleased (Compl. ¶¶ 80-92).

### B.      The Debtors File for Bankruptcy and Former Insiders Are Prosecuted.

On November 11 and November 14, 2022, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.   In the months that followed, FTX Insiders including Gary Wang, Nishad Singh, Caroline Ellison, co-Chief Executive Officer of Alameda, and Ryan Salame, co-CEO of FTX Digital Markets, pleaded guilty to crimes perpetrated through the very practices that facilitated the K5 and Mount Olympus Transactions.   Bankman-Fried himself has been charged with wire fraud, conspiracy to commit wire fraud, conspiracy to commit securities fraud, conspiracy to commit commodities fraud, conspiracy to commit money

---

[2]   SGN Albany Capital LLC is a Delaware limited liability company formed on May 16, 2022 for the purpose of engaging in the K5 and Mount Olympus Transactions.  SGN Albany Capital LLC is owned by Bankman-Fried, Zixiao "Gary" Wang (co-founder of FTX and FTX's former Chief Technology Officer), Nishad Singh (FTX's former Director of Engineering), and Alameda.

laundering, and for false and fraudulent statements and representations to FTX's investors and Alameda's lenders. *See* Superseding Indictment, *United States* v. *Bankman-Fried*, 22-cr-00673 (S.D.N.Y. Aug. 14, 2023).

### C.   The Debtors File This Adversary Proceeding.

On June 22, 2023, the Debtors commenced the Adversary Proceeding by filing the *Complaint for Avoidance and Recovery of Transfers and Obligations Pursuant to 11 U.S.C. §§ 105, 544, 547, 548 and 550, and Del. Code Ann. Tit. 6, §§ 1304 and 1305, for Aiding and Abetting Breach of Fiduciary Duty, for Dishonest Assistance Under the Law of the British Virgin Islands, for Unjust Enrichment and for Disallowance of Claims Pursuant to 11 U.S.C. § 502* (the "Complaint") [Adv. D.I. 1] against the K5 Defendants and Defendant SGN Albany Capital LLC (together, the "Defendants").  Through the Complaint, the Debtors seek to recover as fraudulent conveyances the $700 million transferred to the K5 Defendants.  The Debtors also brought claims against Defendants Kives and Baum for aiding and abetting breaches of fiduciary duty under Delaware state law and dishonest assistance under the law of the British Virgin Islands, and against Defendant SGN Albany Capital LLC for property recovery under section 550 of the Bankruptcy Code and for unjust enrichment.

On August 24, 2023, the Debtors filed a *Motion for Default Judgment Against Defendant SGN Albany LLC* [Adv. D.I. 23] after Defendant SGN Albany Capital LLC failed to respond to or enter an appearance in the Adversary Proceeding.  On August 25, 2023, the Clerk of the Bankruptcy Court entered an *Entry of Default* against SGN Albany Capital LLC.  [Adv. D.I. 24.]  On September 11, 2023, the K5 Defendants filed a *Motion to Dismiss Plaintiffs' Complaint* ("Motion to Dismiss") [Adv. D.I. 32] and a *Motion to Stay the Adversary Proceeding Pending Confirmation of Debtors' Chapter 11 Plan* ("Motion to Stay") [Adv. D.I. 38].  Pursuant to the *Stipulated Case Management Plan and Scheduling Order* (the "Scheduling Order") [Adv. D.I. 28]

entered on August 31, 2023, the Debtors' response to the Motion to Dismiss is due November 10, 2023, and the K5 Defendants' reply is due December 11, 2023.  On August 18, 2023, before responding to the Complaint, the K5 Defendants filed this Motion.

## LEGAL STANDARD

As is routinely done in district courts, this Court refers cases arising under the Bankruptcy Code to the Bankruptcy Court.  *See* Am. Standing Order of Reference, Feb. 29, 2012 (C.J. Sleet).   Federal law provides two bases for withdrawing that reference:   mandatory withdrawal and permissive withdrawal.  28 U.S.C § 157(d).  Mandatory withdrawal is not at issue here.  Permissive withdrawal allows "any case or proceeding" to be withdrawn "in whole or in part . . . on the [district court's] own motion or on timely motion of any party, *for cause shown*."  28 U.S.C. § 157(d) (emphasis added).

In evaluating whether a movant has shown cause to withdraw the reference, district courts consider:

1. Whether the action is a "core bankruptcy proceeding" pursuant to 28 U.S.C. § 157(b), for which the Bankruptcy Court is authorized to enter a final judgment;

2. Whether "the parties have requested a jury trial"; and

3. Whether the five factors identified by the Third Circuit in *In re Pruitt*, 910 F.2d 1160 (3d Cir. 1990), are satisfied.  The "*Pruitt* factors" are "whether withdrawal would (i) promote uniformity in bankruptcy administration, (ii) reduce forum shopping and confusion, (iii) conserve the debtors' and creditors' resources, and (iv) expedite the bankruptcy process, as well as (v) the timing of the request for withdrawal."  *Id.* at 1171.

*In re TZEW Holdco LLC*, 2023 WL 2663047, at *2.

"[T]he 'cause shown' requirement in Section 157(d) creates a presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy."  *Id*.  "To overcome that presumption, the moving party has the burden to prove that cause exists to withdraw the reference."  *Id*.  Indeed, this Court has made clear that

the "cause" to withdraw the reference "will be present in only a narrow set of circumstances." *Id.* (quoting *In re Pruitt*, 910 F.2d at 1171 (Mansmann, J., concurring)).

<u>ARGUMENT</u>

The K5 Defendants fail to overcome the presumption that the Bankruptcy Court should adjudicate this Adversary Proceeding. *See In re TZEW Holdco LLC*, 2023 WL 2663047, at *2. The Debtors' fraudulent and preferential transfer claims are "core bankruptcy proceedings" pursuant to 28 U.S.C. § 157(b), and the Bankruptcy Court can issue a final judgment on them. And even if the K5 Defendants could demonstrate that they are entitled to a trial by jury, they have shown no reason why their refusal to consent to a jury trial before the Bankruptcy Court requires that the reference be withdrawn ***now***, rather than when the Adversary Proceeding is ready for trial.[3] Finally, the K5 Defendants have failed to show how litigating the Adversary Proceeding in this Court will promote any of the goals underlying the *Pruitt* factors. The Motion should be denied.

## I. THE ADVERSARY PROCEEDING INVOLVES CORE CLAIMS THAT SHOULD BE LITIGATED IN THE BANKRUPTCY COURT.

### A. The Debtors' Fraudulent and Preferential Transfer Claims Are Quintessential Core Claims on Which the Bankruptcy Court May Enter a Final Judgment.

The K5 Defendants' argument that "bankruptcy courts lack constitutional authority to enter judgment on a fraudulent transfer claim against a non-creditor" (Mot. at 23) is not supported by the law of this Circuit, where courts have held that fraudulent transfer claims are

---

[3]   The K5 Defendants have told the Bankruptcy Court repeatedly that they are eager to avoid litigation *at all*. (*E.g.*, Motion to Stay 5 ("[T]he K5 Defendants have made clear that, upon the Plaintiffs obtaining [the order to acquire SGN Albany Capital LLC's interests from the K5 and Mount Olympus Transactions], they would assist in maximizing the value of the investments for the benefit of the estates, and assist in monetizing them if desired and appropriate"); *id.* at 15 ("Prior to filing [the Motion to Stay], the K5 Defendants asked Plaintiffs to stipulate to a stay *so that discussions could proceed without continued litigation*.") (emphasis added).)

"core" claims with respect to which the Bankruptcy Court can enter final judgment. *See, e.g.*, *In re Paragon Offshore PLC*, 598 B.R. 761, 767 (Bankr. D. Del. 2019) (holding fraudulent transfer claims against a party that has not filed a claim in the bankruptcy "are statutorily core claims which may be finally adjudicated by this [bankruptcy] Court"); *In re Direct Response Media, Inc.*, 466 B.R. 626, 644 (Bankr. D. Del. 2012) (observing that bankruptcy courts may "enter a final judgment on a preference or fraudulent conveyance claim brought by the Debtor to augment the estate").

To determine whether a proceeding is a "core" proceeding, courts "must consult two sources." *In re Paragon Offshore PLC*, 598 B.R. at 767. "First, a court must consult [28 U.S.C.] § 157(b)," which "provides an illustrative list of proceedings that may be considered 'core.'" *Id.* "Second, the court must apply this court's test for a 'core' proceeding. Under that test, 'a proceeding is core [1] if it invokes a substantive right provided by [the Bankruptcy Code] or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case.'" *Id.* at 767-68 (quoting *Halper* v. *Halper*, 164 F.3d 830, 836 (3d Cir. 1999)).

"Proceedings to determine, avoid, or recover preferences" and "proceedings to determine, avoid, or recover fraudulent conveyances" are quintessential "core proceedings." 28 U.S.C. § 157(b)(2)(F), (H). Accordingly, courts in this District have held that, as "statutorily core claims," fraudulent transfer claims "may be finally adjudicated by this [bankruptcy] Court." *In re Paragon*, 598 B.R. at 775. Likewise, courts in this District have held that a preference action is a "core" proceeding in which a bankruptcy court may enter final judgment. *In re DBSI, Inc.*, 467 B.R. 767, 773 (Bankr. D. Del. 2012) ("I conclude that I can enter final judgment on the core preference . . . claims[.]"); *In re Direct Response Media*, 466 B.R. at 644 ("[B]ankruptcy courts[] [have] authority to . . . finally adjudicate preference and fraudulent conveyance actions.").

-8-

The K5 Defendants' argument that—despite the plain language of the statute—"the Bankruptcy Court lacks constitutional authority to resolve the [Debtors'] fraudulent and preferential transfer claims against the non-creditor K5 Defendants" (Mot. at 22) implicitly asks this Court to take the extraordinary step of finding 28 U.S.C. § 157(b)(2) unconstitutional.  *In re Paragon*, 598 B.R. 761, 770 ("Asking this Court to find that bankruptcy judges may not enter final orders in a subset of fraudulent conveyance actions is . . . asking this Court to declare that a portion of 28 U.S.C. § 157 is unconstitutional as written.").  In support of their argument, the K5 Defendants point to two cases:  *Granfinanciera, S.A.* v. *Nordberg*, 492 U.S. 33 (1989), and *Stern* v. *Marshall*, 564 U.S. 462 (2011).  But as courts in this District have held, neither case directly addresses the question of whether a bankruptcy court may enter a final order with respect to fraudulent transfer claims and preference claims against a non-creditor.

*First*, in *Granfinanciera*, the Supreme Court considered the narrow question of "whether a person who has not submitted a claim against a bankruptcy estate has a right to a jury trial when sued by the trustee in bankruptcy to recover an allegedly fraudulent monetary transfer." 492 U.S. at 36.  The Court held that "the Seventh Amendment entitles such a person to a trial by jury, notwithstanding Congress' designation of fraudulent conveyance actions as 'core proceedings' in 28 U.S.C. § 157(b)(2)(H)."  *Id.  Granfinanciera* did *not* "express any view as to whether the Seventh Amendment or Article III allows jury trials in such actions to be held before non-Article III bankruptcy judges subject to the oversight provided by the district courts pursuant to the 1984 Amendments," or whether bankruptcy courts may enter final judgment in those proceedings by dispositive motion.  *Id.* at 64.  As the Bankruptcy Court in *Paragon* explained, "[w]hen the Supreme Court refused to weigh in on the constitutionality of 'the oversight provided by the district courts pursuant to the 1984 Amendments,' they were refusing to weigh in on the

Article III constitutionality of the statutory scheme that was codified, *inter alia*, in the familiar directives of 28 U.S.C. [§ 157].”  *In re Paragon*, 598 B.R. at 773 (quoting *Granfinanciera*, 492 U.S. at 64).  Thus, “the *Granfinanciera* Court intentionally and explicitly refrained from extending its opinion to the constitutionality of the entry of final orders by bankruptcy courts pursuant to 28 U.S.C. [§ 157].”  *Id.*

   *Second*, in *Stern*, the Supreme Court addressed two narrow questions:  (i) whether a state-law counterclaim for defamation raised in response to a claim against the estate for tortious interference with contractual relations was a “core proceeding” under § 157(b)(2)(C); and (ii) if that state-law counterclaim were a core proceeding under the statute, whether it would be an impermissible delegation of judicial power to allow the bankruptcy judge to enter a final order on that state-law counterclaim.  *See* 564 U.S. at 475-78, 482.  With respect to the latter question, the Court held that the “Bankruptcy Court . . .  lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor’s proof of claim.”  *Id.* at 503.  But that case was vastly different from the present one, which involves fraudulent and preferential transfers, not claims for defamation or tortious interference.

   Thus, neither *Granfinanciera* nor *Stern* supports the K5 Defendants’ contention that a bankruptcy court may not enter final orders in fraudulent or preferential transfer actions against a non-creditor.  The K5 Defendants all but admit this in their brief, stating:  “Other courts have reasoned that neither *Granfinanciera* nor *Stern* had occasion to formally resolve the question of whether fraudulent transfer claims against non-creditors must be resolved by Article III courts, *because that question was not formally presented in either case*.”  (Mot. at 25 (emphasis added).)

Defendants can only speculate, based on case law outside of this Circuit, as to how the Supreme Court *would* rule *if* it were presented with that issue.  (*Id.*)[4]

But courts in this Circuit already have expressly declined to accept the K5 Defendants' argument.  *See In re Paragon*, 598 B.R. at 775 (declining to follow K5 Defendants' out-of-circuit authority and stating, "[b]ecause neither *Stern* nor *Granfinanciera* control on this issue, Movants are not asking this Court to apply controlling precedents to the matter at hand. Instead, Movants are asking this Court to *extend* the holdings of those cases. . . . The Court declines to make that leap."); *In re DBSI, Inc.*, 467 B.R. at 767 ("*Stern*'s holding should be read narrowly and thus restricted to the case of a 'state-law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim.'") (quoting *Stern*, 564 U.S. at 503); *In re Direct Response Media*, 466 B.R. at 644 ("This Court disagrees that the *Stern* decision stands for the . . . proposition that a non-Article III court does not have authority to enter a final judgment on a preference or fraudulent conveyance claim brought by the Debtor to augment the estate, or any other core claim (as defined in 28 U.S.C. § 157(b)(2)), that is not a state law counterclaim.").  And even if the Court were to agree with the K5 Defendants' interpretation of *Granfinanciera* and *Stern*, the appropriate outcome is for the Bankruptcy Court to "hear the proceeding and submit proposed findings of fact and conclusions of law to the district court."  Am. Standing Order of Reference (D. Del. Feb. 29, 2012) (C.J. Sleet); *see also In re DBSI, Inc.*, 467 B.R. at 775-76 (noting the Amended Standing Order has "rendered" this issue "academic" since the "District Court can

---

[4]    The Supreme Court itself has indicated, *in a case in which a debtor brought a fraudulent conveyance action against a non-claimant*, that this issue is *not* decided:  "[t]he Court of Appeals held, *and we assume without deciding*, that the fraudulent conveyance claims in this case are" claims on which a bankruptcy court may not enter final judgment.  *Exec. Benefits Ins. Agency* v. *Arkison*, 573 U.S. 25, 37 (2014).  *See In re Paragon*, 598 B.R. at 775 n.82 (citing *Exec. Benefits* and declining to following out-of-circuit holdings cited by K5 Defendants).

treat any order issued by this Court as a recommendation if it later determines that Article III precluded me from entering a final judgment").

     **B.**     **The Debtors' Two Non-Fraudulent Transfer, Non-Preference Claims Should Also Be Adjudicated in the Bankruptcy Court.**

     Section 157 provides bankruptcy courts with different authority with respect to "non-core" claims.  Specifically, 28 U.S.C. § 157(c)(1) authorizes the bankruptcy court to "hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," and then "submit proposed findings of fact and conclusions of law to the district court."   28 U.S.C. § 157(c)(1).  The district court must then review those proposed findings and conclusions *de novo* and enter any final orders or judgments."  *Exec. Benefits Ins. Agency* v. *Arkison*, 573 U.S. 25, 34 (2014) (citing 28 U.S.C. § 157(c)(1)).

     The K5 Defendants argue that "[n]one of Plaintiffs' non-fraudulent transfer state or foreign law claims qualify as core claims under" 28 U.S.C. § 157(b)(2).  (Mot. at 28.)  They appear to refer to ***two*** of the ***fourteen*** claims the Debtors have brought against the K5 Defendants, *i.e.*, Count 13 (Aiding and Abetting Breach of Fiduciary Duty) and Count 14 (Dishonest Assistance). (*Id.*)  But it is far from clear that these two claims are not "core" proceedings.  Section 157(b) is "not an exhaustive list of core proceedings," *In re Direct Response Media*, 466 B.R. at 645, and courts have observed that a state law claim for aiding and abetting a breach of fiduciary duty may be "core," *In re UD Dissolution Corp.*, 629 B.R. 11, 24 (Bankr. D. Del. 2021) (finding that a count of aiding and abetting a breach of fiduciary duty "is a core proceeding over which the bankruptcy court may preside"); *In re Am. Bus. Fin. Servs., Inc.*, 457 B.R. 314, 319-20 (Bankr. D. Del. 2011) (finding that the court "has jurisdiction to hear," among others, claims of aiding and abetting breach of fiduciary duty that "relate entirely to matters integral to the bankruptcy case" and "directly stem[] from the bankruptcy case").

-12-

Nonetheless, *even if* claims are not "core" proceedings, that is not a sufficient basis for withdrawal of the reference. *In re AgFeed USA, LLC*, 565 B.R. 556, 564 (D. Del. 2016) ("[T]he mere fact the Complaint asserts non-core claims does not mandate withdrawal."). "Proceedings should not be withdrawn for the sole reason that they are non-core." *Hatzel & Buehler, Inc.* v. *Cent. Hudson Gas & Elec. Corp.*, 106 B.R. 367, 371 (D. Del. 1989). "In non-core proceedings, the bankruptcy court is given the power to submit proposed findings of fact and conclusions of law to the district court. Indeed, permitting the Bankruptcy Court to oversee pretrial matters . . . , and withdrawing it only when it is ripe for a jury trial, promotes judicial economy and a timely resolution of [a] case." *In re LTC Holdings*, 2019 WL 4643801, at *5 (D. Del. Sept. 24, 2019).

## II.   THE K5 DEFENDANTS' DEMAND FOR JURY TRIAL DOES NOT ESTABLISH CAUSE TO WITHDRAW THE REFERENCE.

The K5 Defendants make very clear that they do not wish for this case to be heard by the Bankruptcy Court. But their demand for a jury trial also does not justify withdrawal of the reference at this time. *See In re Elk Petroleum, Inc.*, 2022 WL 4355285, at *4 (D. Del. Sept. 20, 2022) (collecting cases). As this Court has held, a party's "potential entitlement" to a jury trial "at some future date is not sufficient grounds to withdraw the reference," particularly before any dispositive briefing has concluded and before discovery has commenced. *In re TZEW Holdco LLC*, 2023 WL 2663047, at *2-3; *see also In re Am. Classic Voyages Co.*, 337 B.R. 509, 509 (D. Del. 2006) ("[I]t is well-settled that a district court is not compelled to withdraw a reference simply because a party is entitled to a jury trial." (citation omitted)). To the contrary, a motion for "[w]ithdrawal of the reference based on the ground that a party is entitled to a jury trial should be deferred until the case is 'trial ready.'" *In re TZEW Holdco LLC*, 2023 WL 2663047, at *2 (quoting *In re Big V Holding Corp.*, 2002 WL 1482392, at *5); *In re LTC Holdings*, 2019 WL 4643801, at *6 ("[G]enerally such a right [to jury trial] does not compel withdrawing the reference until the

case is ready to proceed to trial.") (quoting *In re Formica Corp.*, 305 B.R. 147, 150 (S.D.N.Y. 2004)).

Nonetheless, "[a]lthough assertion of a right to jury trial coupled with refusal to consent to such trial before the bankruptcy court is not 'itself sufficient cause for discretionary withdrawal,' it is one of the factors the Court considers." *In re TZEW Holdco LLC*, 2023 WL 2663047, at *3 (quoting *In re The IT Group, Inc.*, 2007 WL 211179, at *2 (D. Del. Jan. 26, 2007)). In deciding whether to withdraw a case from the bankruptcy court based on a jury demand, courts also consider "(1) whether the case is likely to reach trial; (2) whether protracted discovery with court oversight will be required; and (3) whether the bankruptcy court is familiar with the issues presented." *Id.* (citing *In re Enron Corp.*, 317 B.R. 232, 235 (S.D.N.Y. 2004)). Each of these factors weighs in favor of denying the Motion.

*First*, the Adversary Proceeding is in the earliest stages, with much work remaining to be done before trial. On August 31, 2023, the Bankruptcy Court entered the Scheduling Order. [Adv. D.I. 28.] On September 11, 2023, the K5 Defendants concurrently filed the Motion to Dismiss [Adv. D.I. 32] and a Motion to Stay the Adversary Proceeding pending confirmation of the Debtors' Chapter 11 plan [Adv. D.I. 38]. The parties will not exchange their initial disclosures pursuant to Federal Rule of Civil Procedure 26 until October 20, 2023, and no party has served any discovery request. Moreover, the Scheduling Order anticipates summary judgment briefing to conclude no sooner than May 23, 2025. [Adv. D.I. 28, at 3.] Because of the numerous "unresolved pre-trial matters, especially discovery, one can only speculate when it will proceed to trial, if at all." *In re Enron Corp.*, 317 B.R. at 235.

*Second*, significant discovery will be required to adjudicate the Complaint, which asserts 14 claims against the K5 Defendants. To prove these claims, the Debtors anticipate taking

discovery of each of the K5 Defendants, including by serving document requests and interrogatories, by taking up to 20 depositions as permitted by the Scheduling Order, and by conducting expert discovery.  *See In re TZEW*, at *3 (observing that "significant Bankruptcy Court oversight" of discovery relating to claims against eight individuals would be required).

        *Third*, for almost a year, the Bankruptcy Court has presided over the Debtors' pending Chapter 11 Cases, which have been described as the result of an "unprecedented" situation" involving nearly 100 corporate entities stemming from a "complete failure of corporate controls" and a "complete absence of trustworthy financial information."[5]  The Bankruptcy Court is familiar with the facts and peculiarities of these Chapter 11 Cases, and is adjudicating a number of other adversary proceedings involving similar facts.[6]  The Bankruptcy Court is, therefore, best suited to adjudicate pretrial motions and discovery disputes.  *See In re LTC Holdings*, 2019 WL 4643801, at *8 ("The parties' resources . . . are likely better served by the Bankruptcy Court's retention of the Adversary Proceeding based on its familiarity with the underlying facts and issues."); *In re Circle of Yoakum*, 2006 WL 2347710, at *2 (D. Del. June 23, 2006) (finding that judicial economy favored Bankruptcy Court resolving pretrial proceedings because of its familiarity with facts).  In the last month alone, the Bankruptcy Court held multiple hearings and

---

[5]  *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [Bankr. D.I. 24], at ¶ 5.

[6]  *Alameda Research Ltd.* v. *Voyager Digital, LLC.*, Adv. Pro. No. 23–50084 (Bankr. D. Del. 2023); *Alameda Research LLC* v. *FTX Digital Markets. Ltd.*, Adv. Pro. No. 23–50145 (Bankr. D. Del. 2023); *Alameda Research Ltd.* v. *Bankman-Fried.*, Adv. Pro. No. 23–50381 (Bankr. D. Del. 2023); *Alameda Research Ltd.* v. *Giles*, Adv. Pro. No. 23–50380 (Bankr. D. Del. 2023); *Alameda Research Ltd.* v. *Rocket Internet Capital Partners II SCS*, Adv. Pro. No. 23–50379 (Bankr. D. Del. 2023); *Alameda Research LLC* v. *Friedberg*, Adv. Pro. No. 23–50419 (Bankr. D. Del. 2023); *FTX Trading Ltd.* v. *Lorem Ipsum UG*, Adv. Pro. No. 23–50438 (Bankr. D. Del. 2023); *Alameda Research Ltd.* v. *Platform Life Scis. Inc.*, Adv. Pro. No. 23–50444 (Bankr. D. Del. 2023); *Alameda Research LLC* v. *Bankman*, Adv. Pro. No. 23-50584 (Bankr. D. Del. 2023); *FTX Trading Ltd.* v. *Burgess*, Adv. Pro. 23-50585 (Bankr. D. Del. 2023).

entered multiple settlement orders resolving "core" proceedings between the Debtors and third parties.[7]

Therefore, even if the Court concludes that, at some future time, it must oversee a jury trial, withdrawal of the reference now is premature.[8]  *See In re AgFeed*, 565 B.R. at 566 ("Permitting the Bankruptcy Court to oversee pretrial matters in this proceeding, and withdrawing it only when it is ripe for a jury trial, promotes judicial economy and a timely resolution of this case.").[9]

## III.   THE *PRUITT* FACTORS DO NOT SUPPORT WITHDRAWAL OF THE REFERENCE.

Application of the *Pruitt* factors—factors that the Third Circuit has identified for determining whether cause exists to withdraw the reference—also militates against permissive withdrawal.  "Importantly, these factors are not weighed 'on a scale of equipoise'—rather, the [K5

---

[7]   *E.g.*, *Order Authorizing the Debtors to Enter Into Settlement Agreement with IEX Group, Inc., Approving the Settlement Agreement, and Granting Related Relief* (Aug. 18, 2023) [Bankr. D.I. 2204]; *Order Authorizing the Debtors to Enter Into Settlement Agreement With the Genesis Entities, Approving the Settlement Agreement; and Granting Related Relief* (Sept. 6, 2023) [Bankr. D.I. 2433].

[8]   The K5 Defendants' citation to *In re USA Floral Prods., Inc.*, for the opposite proposition is unavailing.  There, the only argument against motion to withdraw the reference was its "timeliness," and that case was more advanced than here.  2005 WL 3657096, at *1 (D. Del. July 1, 2005).  There, the court had decided defendants' motion to dismiss, *id.*, whereas the K5 Defendants' Motion to Dismiss and Motion to Stay are pending before the Bankruptcy Court. In any event, the *Floral* court's statement that "[b]ecause . . . Defendants are entitled to a jury trial, it will likely be more efficient for this court to manage the case through the pretrial process," *id.*, is plainly at odds with this Court's holding that "[w]ithdrawal of the reference based on the ground that a party is entitled to a jury trial should be deferred until the case is 'trial ready.'"  *In re TZEW Holdco LLC*, 2023 WL 2663047, at *2 (quotation omitted).

[9]   *In re Am. Classic Voyages Co.*, 337 B.R. at 511-12 ("A District Court may consider a demand for a jury trial insufficient cause for discretionary withdrawal if the motion is made at an early stage of the proceedings and dispositive motions may resolve the matter."); *In re Nortel Networks, Inc.*, 539 B.R. 704, 710 (D. Del. 2015) ("[E]ven for non-core claims for which a jury trial is requested, a bankruptcy court is capable of functioning in a role similar to that of a magistrate by handling pre-trial issues.").

-16-

Defendants] must 'overcome a scale already *heavily weighted against withdrawal.*'"  *In re Elk Petroleum, Inc.*, 2022 WL 4355285, at *4 (emphasis added) (quoting *Feldman* v. *ABN AMBRO Mortg. Grp., Inc.*, 2020 WL 618604, at *7 (E.D. Pa. Feb. 10, 2020)).

### A.   Withdrawing the Reference Will Not Promote Uniformity in the Administration of the Chapter 11 Cases.

As of the date of this filing, the Debtors have filed numerous adversary proceedings, including this one.  Many of these complaints have related allegations that inevitably will be subject to dispute by multiple defendants in multiple actions, including, among other things, (i) that former insiders of the Debtors removed or concealed Debtor assets and (ii) that the Debtors were insolvent at various times.[10]   Indeed, the K5 Defendants' Motion to Dismiss argues that the Debtors were solvent as of the Petition Date.  [Adv. D.I. 33, at 35.]  Because the Bankruptcy Court will decide allegations common to all adversary proceedings, allowing the Bankruptcy Court to continue hearing the Adversary Proceeding eliminates the risk of inconsistent findings between each litigation and, therefore, promotes uniformity in the administration of the Chapter 11 Cases. *See In re Liberty State Benefits of Del. Inc.*, 2015 WL 1137591, at *3 (D. Del. Mar. 12, 2015) (holding the first *Pruitt* factor supports retention where the bankruptcy court "has presided over at least thirteen . . . adversary proceedings . . . involving the same events, non-party witnesses and claims as those at issue in this lawsuit" (quotation omitted)); *In re Circle of Yoakum*, 2006 WL 2347710, at *2 (finding that judicial economy favored Bankruptcy Court resolving pre-trial proceedings due to its familiarity with facts of the case).

---

[10]  *E.g.*, Compl. ¶¶ 101, 113, 118, 134, 141, 150; *see also* Compl. ¶¶ 41-44, 55, 113, *Platform Life Scis. Inc.*, Adv. Pro. No. 23–50444 (Bankr. D. Del. 2023); Compl. ¶ 31, *Voyager Digital, LLC*, Adv. Pro. No. 23-50084 (Bankr. D. Del. 2023); Compl. ¶¶ 34-36, 63-68, *Giles et al.*, Adv. Pro. No. 23-50380 (Bankr. D. Del. 2023).

## B. Withdrawing the Reference Would Encourage Forum Shopping.

This Adversary Proceeding is in its early stages, and "[p]rematurely removing the case from the bankruptcy court would tend to encourage forum-shopping." *Seitz* v. *Rothermel*, 2022 B.R. 846, 851 (E.D. Pa. 2022); *see also In re Formica Corp.*, 305 B.R. 147, 151 (S.D.N.Y. 2004) ("[C]ourts should employ withdrawal 'judiciously in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court.'") (citation omitted). This is particularly true here, where bankruptcy courts in this District have repeatedly declined to endorse the position—advanced by the K5 Defendants—that the "Bankruptcy Court lacks constitutional authority to decide this case" (Mot. at 8). *See infra* Section II.A.

The Bankruptcy Court is also the appropriate forum where—as here—most claims arise under the Bankruptcy Code or analogous Delaware statutes. *See In re Homeland Stores, Inc.*, 204 B.R. 427, 434 (D. Del. 1997) (noting "the expertise of the Bankruptcy Court in . . . wading through the complexities of the Bankruptcy Code"); *see also In re Liberty State Benefits*, 2015 WL 1137591, at *4 (finding that the bankruptcy court that was overseeing the debtor's bankruptcy case was "a logical forum for" an adversary proceeding).

## C. Withdrawing the Reference Would Waste the Debtors' and Creditors' Resources.

Withdrawing this proceeding will result in unnecessary expenses, particularly for the Debtors. As explained above, the Bankruptcy Court has presided over the Chapter 11 Cases for almost one year and is familiar with many of the core facts and legal issues of this Adversary Proceeding.[11] It makes little sense for this Court to wade into these Chapter 11 Cases at this early stage. *See In re LTC Holdings*, 2019 WL 4643801, at *8 ("The parties' resources, however, are

---

[11] *See infra* note 6 and accompanying text; Section III.A.

likely better served by the Bankruptcy Court's retention of the Adversary Proceeding based on its familiarity with the underlying facts and issues."); *In re AgFeed*, 565 B.R. at 565 (finding that a District Court's "duplicati[on]" of "efforts at an early stage of the case may result in unnecessary expenses for the parties, particularly given that dispositive motions and settlement may resolve the proceeding in advance of trial"); *In re Circle of Yoakum*, 2006 WL 2347710, at *2 (finding that economy favored Bankruptcy Court resolving pretrial proceedings because of its familiarity with facts of the case).  Moreover, to the extent this Court will be required to review the Bankruptcy Court's findings *de novo* (Mot. at 32), such "duplication of judicial efforts is insufficient to demonstrate cause."  *In re Elk Petroleum, Inc.*, 2022 WL 4355285, at *5-6 (quoting *In re Princeton Alternative Income Fund, LP*, 2018 WL 4854639, at *2 (D.N.J. Oct. 14, 2018)).

> **D.**      **Adjudicating the Adversary Proceedings in the Bankruptcy Court Will Expedite the Bankruptcy Process.**

The K5 Defendants assert that "forcing the Bankruptcy Court to oversee this action would slow down the process and delay ultimate resolution of the chapter 11 proceedings."  (Mot. at 33.)  Nothing could be further from the truth, and the K5 Defendants' words ring hollow in light of their persistent attempts to delay and derail adjudication of the claims against them, including through this Motion and a motion they recently filed seeking to stay proceedings.  [Adv. D.I. 38.]

Regardless, in support of their proposition, the K5 Defendants refer only to a single district court case noting the efficiency of "eliminating a round of appeals by skipping straight to the District Court" and the Court's "expertise to efficiently dispose of adversarial litigation."  (Mot. at 33.) (citing *In re Appleseed's Intermediate Holdings*, 2011 WL 6293251, at *3 (D. Del. Dec. 15, 2011)).  But in *Appleseed*, the court observed that *Stern*, which had been issued less than six months earlier, "spawned significant confusion," and withdrew the reference "[t]o avoid confusion" and "avoid expending resources on collateral litigation to determine whether the

Bankruptcy Court was able to enter final judgments in accordance with *Stern*." 2011 WL 6293251, at *3. There is no need for such caution today. Following the court's decision in *Appleseed*, the Third Circuit clarified the Bankruptcy Court's authority "to enter a final judgment on core proceedings," and the district court's authority to "review[] the bankruptcy court's judgment 'under traditional appellate standards.'" *In re Tribune Media Co.*, 902 F.3d 384, 393 (3d Cir. 2018) (quoting *Stern*, 564 U.S. at 474-75); *see infra* Sections I.A-B. Thus, in suggesting that the Adversary Proceeding ought to "skip[] straight to the District Court," (Mot. at 33), the K5 Defendants are, in fact, proposing to "derail[] the appellate process provided by statute" to which Debtors are entitled. *In re Pruitt*, 910 F.2d at 1168 (quotation omitted).

## CONCLUSION

For all of the foregoing reasons, the Adversary Proceeding should be heard by the Bankruptcy Court. The Court should deny the K5 Defendants' Motion.

Dated:  September 22, 2023

**LANDIS RATH & COBB LLP**
/s/ *Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
        mcguire@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Steven L. Holley (admitted *pro hac vice*)
Andrew G. Dietderich (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Christopher J. Dunne (admitted *pro hac vice*)
Jacob M. Croke (admitted *pro hac vice*)
Hilary M. Williams (*pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: holleys@sullcrom.com
        dietdericha@sullcrom.com
        gluecksteinb@sullcrom.com
        dunnec@sullcrom.com
        crokej@sullcrom.com
        williamsh@sullcrom.com

*Counsel for the Debtors, Debtors-in-Possession, and Plaintiffs Alameda Research Ltd. and Clifton Bay Investments LLC f/k/a Alameda Research Ventures LLC*