# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>FTX TRADING LTD., *et al.*,<br><br>        Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered) |
| ALAMEDA RESEARCH LTD. and CLIFTON BAY INVESTMENTS LLC f/k/a ALAMEDA RESEARCH VENTURES LLC,<br><br>        Plaintiffs,<br><br>v.<br><br>MICHAEL KIVES, BRYAN BAUM, K5 GLOBAL HOLDINGS LLC, K5 GLOBAL TECHNOLOGY LLC, MBK CAPITAL LP SERIES T, K5 GROWTH CO-INVEST I GP LLC, K5 GLOBAL GROWTH FUND I GP LLC, K5 GLOBAL VENTURES LLC, MOUNT OLYMPUS CAPITAL LP, MOUNT OLYMPUS CAPITAL LLC, K5 GLOBAL GROWTH FUND II LP, K5 GLOBAL GROWTH FUND II GP LLC, K5X FUND I LP, K5X FUND I LLC, and SGN ALBANY LLC,<br><br>        Defendants. | Adv. Pro. No. 23-50411 (JTD)<br><br>C.A. No. 23-915-GBW |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF THE
## K5 DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE

Dated: October 13, 2023

| | |
|---|---|
| Jeremy W. Ryan (No. 4057)<br>Kevin R. Shannon (No. 3137)<br>Andrew L. Brown (No. 6766)<br>**POTTER ANDERSON & CORROON LLP**<br>1313 N. Market Street, 6th Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 984-6000 | James E. Brandt *(admitted pro hac vice)*<br>Suzzanne Uhland *(admitted pro hac vice)*<br>Hugh Murtagh (admitted *pro hac vice*)<br>**LATHAM & WATKINS LLP**<br>1271 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 906-1200 |
| Michael J. Reiss *(admitted pro hac vice)*<br>**LATHAM & WATKINS LLP**<br>355 S. Grand Avenue, Suite 100<br>Los Angeles, California 90071<br>Telephone: (213) 485-1234 | Michael E. Bern (admitted *pro hac vice*)<br>**LATHAM & WATKINS LLP**<br>555 11th St. NW<br>Washington, DC 20004<br>Telephone: (202) 637-2200 |

*Attorneys for K5 Defendants, et al.*

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................1

ARGUMENT ..........................................................................................................................2

I.    THE BANKRUPTCY COURT'S LACK OF AUTHORITY TO DECIDE THE CLAIMS WEIGHS IN FAVOR OF WITHDRAWAL OF THE REFERENCE ................2

        A.    The Fraudulent Transfer And Preference Claims .......................................................2
        B.    The Remaining Claims ...............................................................................................5

II.    The K5 DEFENDANTS' RIGHT TO A JURY TRIAL WEIGHS IN FAVOR OF WITHDRAWING THE REFERENCE ..................................................................................6

III.    THE *PRUITT* FACTORS FAVOR WITHDRAWAL OF THE REFERENCE ..................8

CONCLUSION .......................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re AgFeed USA, LLC*,
  565 B.R. 556 (D. Del. 2016) ................................................................................................. 9

*In re Allied Sys. Holdings, Inc.*,
  524 B.R. 598 (Bankr. D. Del. 2015) ..................................................................................... 6

*In re Appleseed's Intermediate Holdings*,
  2011 WL 6293251 (D. Del. Dec. 15, 2011) ........................................................................ 10

*In re Bellingham Ins. Agency, Inc.*,
  702 F.3d 553 (9th Cir. 2012) ............................................................................................ 2, 4

*In re DBSI, Inc.*,
  467 B.R. 767 (Bankr. D. Del. 2012) ..................................................................................... 5

*In re Del. & Hudson Ry. Co.*,
  122 B.R. 887 (D. Del. 1991) ................................................................................................ 6

*In re Direct Response Media, Inc.*,
  466 B.R. 626 (Bankr. D. Del. 2012) ..................................................................................... 5

*Dynegy Danskammer, L.L.C. v. Peabody COALTRADE Int'l Ltd.*,
  905 F. Supp. 2d 526 (S.D.N.Y. 2012) ............................................................................. 3, 7

*In re Elk Petroleum, Inc.*,
  2022 WL 4355285 (D. Del. Sept. 20, 2022) ...................................................................... 10

*Galli v. N.J. Meadowlands Comm'n*,
  490 F.3d 265 (3d Cir. 2007) ................................................................................................ 5

*Granfinanciera, S.A. v. Nordberg*,
  492 U.S. 33 (1989) ...................................................................................................... *passim*

*Hatzel & Buehler, Inc. v. Orange & Rockland Utils., Inc.*,
  107 B.R. 34 (D. Del. 1989) .................................................................................................. 7

*In re Int'l Auction & Appraisal Servs. LLC*,
  493 B.R. 460 (Bankr. M.D. Pa. 2013) ................................................................................. 4

*In re Madison Bentley Assocs., LLC*,
  474 B.R. 430 (S.D.N.Y. 2012) ............................................................................................. 5

*In re Millennium Lab Holdings II, LLC*,
   242 F. Supp. 3d 322 (D. Del. 2017)..................................................................................4

*In re Millennium Lab Holdings II, LLC*,
   945 F.3d 126 (3d Cir. 2019)............................................................................................10

*In re NDEP Corp.*,
   203 B.R. 905 (D. Del. 1996).................................................................................1, 2, 7, 8

*Orion Pictures Corp. v. Showtime Network*,
   4 F.3d 1095 (2d Cir. 1993)................................................................................................7

*In re Paragon Offshore PLC*,
   598 B.R. 761 (Bankr. D. Del. 2019) .............................................................................4, 5

*In re Pruitt*,
   910 F.2d 1160 (3d Cir. 1990)..................................................................................1, 8, 10

*Stern v. Marshall*,
   564 U.S. 462 (2011)................................................................................................ passim

*In re TK Holdings, Inc.*,
   2021 WL 6101496 (Bankr. D. Del. Dec. 20, 2021).........................................................6

*In re Tribune Media Co.*,
   902 F.3d 384 (3d Cir. 2018)............................................................................................10

*In re TZEW Holdco LLC*,
   2023 WL 2663047 (D. Del. Mar. 28, 2023) .....................................................................8

*In re U.S.A. Floral Prods., Inc.*,
   2005 WL 3657096 (D. Del. Jul. 1, 2005) .................................................................2, 7, 9

*In re Universal Mktg., Inc.*,
   541 B.R. 259 (Bankr. E.D. Pa. 2015) ...............................................................................4

**Statutes**

11 U.S.C. § 548(a)(2).............................................................................................................3

28 U.S.C. § 157(b) ..........................................................................................................3, 5, 6

28 U.S.C. § 157(b)(2) ........................................................................................................3, 5

## INTRODUCTION

Plaintiffs acknowledge that in evaluating whether cause exists to withdraw the reference, courts consider (1) whether the Bankruptcy Court is authorized to enter a final judgment; (2) whether a party has demanded a jury trial (which, absent consent, a Bankruptcy Court cannot oversee); and (3) a set of factors, designed to promote judicial economy and efficiency, set forth in *In re Pruitt*, 910 F.2d 1160 (3d Cir. 1990). Pls.' Opp'n to Mot. ("Opp'n") 6, ECF No. 4. When a bankruptcy court lacks authority to adjudicate an adversary proceeding to final judgment and a party is entitled to a jury trial, "courts generally find that judicial economy would be served by withdrawal of the reference," because all three considerations point in the same direction and cause readily exists to withdraw the reference. *In re NDEP Corp.*, 203 B.R. 905, 913 (D. Del. 1996).

That is the case here. Because the Bankruptcy Court lacks constitutional (and in some cases statutory) authority to adjudicate Plaintiffs' claims, this Court alone has the authority to make findings and enter a final judgment. The K5 Defendants, moreover, are entitled to a jury trial that only this Court can oversee. As such, "it would constitute a tremendous waste of judicial resources to permit the bankruptcy judge to continue to maintain jurisdiction over the issues presented in this litigation." *Id.* There is thus strong cause to withdraw the reference here.

Trying to avoid that result, Plaintiffs primarily argue that under "the law of this Circuit," the Bankruptcy Court may enter final judgment over the fraudulent and preferential transfer claims at the heart of Plaintiffs' complaint. Opp'n 7. That is wrong. Plaintiffs do not cite to a single case from the Third Circuit or this Court for that assertion, nor any case from those courts analyzing, let alone resolving, whether the Supreme Court's decisions in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) and *Stern v. Marshall*, 564 U.S. 462 (2011) indicate that bankruptcy courts lack constitutional authority to decide such claims. This Court is thus free to resolve that important question and provide needed guidance within this District. In so doing, it should follow the clear

teaching of the Supreme Court's analysis in those cases and the many courts holding that "*Granfinanciera* and *Stern* settle the question of whether bankruptcy courts have the general authority to enter final judgments on fraudulent conveyance claims asserted against noncreditors to the bankruptcy estate. They do not." *In re Bellingham Ins. Agency, Inc*., 702 F.3d 553, 565 (9th Cir. 2012); K5 Defs' Mot. to Withdraw Reference ("Mot.") 17, ECF No. 1 (collecting cases).

Plaintiffs rely primarily on bankruptcy court decisions within this Circuit that have reached a different conclusion. But bankruptcy judges within this Circuit are themselves divided. And even the cases on which Plaintiffs rely are best read to *agree* that *Stern*'s majority opinion indicates that bankruptcy courts lack constitutional authority to adjudicate such claims. Mot. 19–21. More fundamentally, Plaintiffs do not engage with the key language of *Granfinanciera* or *Stern* on which the K5 Defendants and several courts have relied in concluding that only an Article III court can issue a final judgment with respect to Plaintiffs' claims. *See* Mot. 17–19.

Because the Bankruptcy Court lacks authority to adjudicate Plaintiffs' claims or oversee a jury trial in this case, it would be inefficient and wasteful to force the parties to litigate this case once before the Bankruptcy Court and then a second time *de novo* before this Court. *See, e.g.*, *In re NDEP Corp.*, 203 B.R. at 913; *In re U.S.A. Floral Prods., Inc.*, 2005 WL 3657096, at *2 (D. Del. Jul. 1, 2005). Judicial economy and efficiency thus likewise favor withdrawal of the reference now. The K5 Defendants' motion to withdraw the reference should be granted.

## ARGUMENT

### I. THE BANKRUPTCY COURT'S LACK OF AUTHORITY TO DECIDE THE CLAIMS WEIGHS IN FAVOR OF WITHDRAWAL OF THE REFERENCE

#### A. The Fraudulent Transfer And Preference Claims

The K5 Defendants' opening brief explained why the Supreme Court's decisions in *Granfinanciera* and *Stern* establish that the Bankruptcy Court lacks constitutional authority to

decide Plaintiffs' fraudulent transfer or preference claims. Mot. 15–21. Tellingly, Plaintiffs make no real effort to engage with that demonstration, instead opting to sidestep it. Indeed, none of Plaintiffs' arguments rebut that the Bankruptcy Court lacks authority to adjudicate Plaintiffs' claims. That consideration strongly supports withdrawal of the reference.

Plaintiffs first emphasize that fraudulent transfer claims are "core" claims as a *statutory* matter. *See* Opp'n 7–9. But in *Stern*, the Supreme Court held that bankruptcy courts do not have *constitutional* authority to enter final judgments over certain claims, even if the claim is designated as "core" under 28 U.S.C. § 157(b). 564 U.S. at 482. Post-*Stern* courts have thus widely recognized that "the core/non-core determination is no longer dispositive of a bankruptcy court's authority to enter a final determination." *Dynegy Danskammer, L.L.C. v. Peabody COALTRADE Int'l Ltd.*, 905 F. Supp. 2d 526, 530 (S.D.N.Y. 2012).[1]

Plaintiffs next argue that neither *Granfinanciera* nor *Stern* "*directly* addresses the question of whether a bankruptcy court may enter a final order with respect to fraudulent transfer and preference claims against a non-creditor." Opp'n 9 (emphasis added). That misses the mark. While "that question was not formally presented in either case," Mot. 19, the Supreme Court's analysis is clear: "[I]f a statutory cause of action, such as respondent's right to recover a fraudulent conveyance under 11 U.S.C. § 548(a)(2), is not a 'public right' for Article III purposes, then Congress may not assign its adjudication to a specialized non-Article III court lacking 'the essential attributes of the judicial power.'" *Granfinanciera*, 492 U.S. at 53. And *Granfinanciera* "rejected [the] argument that a fraudulent conveyance action filed on behalf of a bankruptcy estate against a noncreditor in a bankruptcy proceeding fell within the 'public rights' exception." *Stern*,

---

[1] Plaintiffs suggest that Defendants are asking this Court "to take the extraordinary step of finding 28 U.S.C. § 157(b)(2) unconstitutional." Opp'n 9. In fact, it is Plaintiffs who are asking this Court to ignore Supreme Court precedent on the limits of a bankruptcy court's constitutional authority.

3

564 U.S. at 492. *Stern* thus explained that "Congress could not constitutionally assign resolution of [a] fraudulent conveyance action to a non-Article III court." *Id.* n.7.

Plaintiffs make no effort to explain how bankruptcy courts possess constitutional authority to adjudicate fraudulent transfer claims in light of the Supreme Court's analysis. Nor do Plaintiffs even try to distinguish the many courts—including the only court of appeals to address the question—to hold that "*Granfinanciera* and *Stern* settle the question of whether bankruptcy courts have the general authority to enter final judgments on fraudulent conveyance claims asserted against noncreditors to the bankruptcy estate. They do not." *In re Bellingham Ins. Agency, Inc.*, 702 F.3d at 565; *see also* Mot. 17 (collecting cases).

Instead, Plaintiffs argue that courts in this Circuit have declined to accept the K5 Defendants' argument. But Plaintiffs do not point to a single decision from either *this* Court or the Third Circuit. In fact, this Court has recognized that claims that do not fall within the "public rights" exception—*i.e.*, matters of private right—must be adjudicated by an Article III court. *See In re Millennium Lab Holdings II, LLC*, 242 F. Supp. 3d 322, 328, 339 (D. Del. 2017). Plaintiffs instead rely exclusively on bankruptcy court decisions, which are themselves divided. *Compare, e.g.*, *In re Universal Mktg., Inc.*, 541 B.R. 259, 307 (Bankr. E.D. Pa. 2015) (bankruptcy courts lack constitutional authority to enter final judgments), *In re Int'l Auction & Appraisal Servs. LLC*, 493 B.R. 460, 465 (Bankr. M.D. Pa. 2013) (same), *with In re Paragon Offshore PLC*, 598 B.R. 761, 770–75 (Bankr. D. Del. 2019) (bankruptcy courts have constitutional authority).

In any event, the K5 Defendants explained why the two bankruptcy court decisions on which Plaintiffs primarily rely do not support ignoring the constitutional limitations on a bankruptcy court's authority. Those courts both understood *Stern*'s majority opinion to signal that bankruptcy courts lack authority to enter final judgments with respect to fraudulent conveyance

4

claims. *See* Mot. 19–20. One case declined to follow *Stern*'s majority opinion because it wrongly believed that there were not five votes for it. *See* Mot. 20 (discussing *In re Direct Response Media, Inc.*, 466 B.R. 626 (Bankr. D. Del. 2012)). The other acknowledged that "perhaps *Stern* provides compelling evidence of how the Supreme Court would rule on this issue," but declined to follow it in the absence of a direct holding. Mot. 19–20 (discussing *In re Paragon Offshore PLC*, 598 B.R. 761 (Bankr. D. Del. 2019); *but see Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 274 (3d Cir. 2007) (courts should give case resolution "the Supreme Court would be likely to reach were the case heard there"). Plaintiffs do not try to defend those decisions on their merits.[2]

*Granfinanciera* and *Stern* are clear that "bankruptcy courts lack authority to issue final judgments on fraudulent conveyance claims brought against a person who has not submitted a claim against the estate." *In re Madison Bentley Assocs., LLC*, 474 B.R. 430, 438–39 (S.D.N.Y. 2012). Accordingly, this factor weighs heavily in favor of withdrawal of the reference.

### B.   The Remaining Claims

The Bankruptcy Court lacks statutory authority to decide Plaintiffs' remaining claims for aiding and abetting a breach of fiduciary duty and dishonest assistance, neither of which is a "core" claim under 28 U.S.C. § 157(b)(2). As Plaintiffs concede, district courts alone may enter final orders or judgments with respect to non-core claims; a bankruptcy court may submit proposed findings or conclusions, but a district court must decide those issues *de novo*. Opp'n 12.

Neither a claim for aiding and abetting a breach of fiduciary duty nor a dishonest assistance claim is among those claims enumerated as "core" claims by 28 U.S.C. § 157(b). While the list

---

[2] Plaintiffs' reliance on a third bankruptcy court decision, *In re DBSI, Inc.*, 467 B.R. 767 (Bankr. D. Del. 2012), is misplaced. That court recognized that *Stern* "held that a fraudulent transfer action against a noncreditor was not a 'public right' and *thus must be determined by an Article III court where the defendant has demanded a jury trial*." *Id.* at 773 n.9 (emphasis added). The only question before it was whether to *dismiss* the action, which was unnecessary. *Id.* at 773 n.9, 776.

5

provided by Section 157(b) is not exhaustive, *see* Opp'n 12, Plaintiffs do not appear to contest that courts determine whether an unenumerated claim is a core claim by reviewing whether the claim "'[1] invokes a substantive right provided by title 11 or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case.'" Mot. 22 (quoting *In re Winstar Commc'ns, Inc.*, 554 F.3d 382, 405 (3d Cir. 2009)). Those factors are dispositive here.

Although Plaintiffs argue that "it is far from clear that these two claims are not 'core' proceedings," Opp'n 12, "the overwhelming majority of courts in this district and other districts conclude that breach of fiduciary claims do not involve the application of bankruptcy law, are ordinary state law causes of action, and could proceed outside the bankruptcy court." *In re Allied Sys. Holdings, Inc.*, 524 B.R. 598, 606 & n.22 (Bankr. D. Del. 2015); *see also In re Del. & Hudson Ry. Co.*, 122 B.R. 887, 894–95 (D. Del. 1991). The only contrary decisions to which Plaintiffs point, both authored by the same judge, simply describe all of the many asserted claims as *enumerated* core proceedings without further analysis of which subcategory under 28 U.S.C. § 157(b) the aiding and abetting claim supposedly fits. Plaintiffs, however, do not argue that their aiding and abetting claim falls into an enumerated subcategory within § 157(b). It does not.

Meanwhile, Plaintiffs' foreign law claim indisputably does not invoke a substantive right provided by title 11, nor does it arise in the context of a bankruptcy case. It therefore is a non-core claim. *See, e.g.*, *In re TK Holdings, Inc.*, 2021 WL 6101496, at *9–10 (Bankr. D. Del. Dec. 20, 2021) (finding foreign law claim non-core). Plaintiffs identify no contrary authority.

## II. THE K5 DEFENDANTS' RIGHT TO A JURY TRIAL WEIGHS IN FAVOR OF WITHDRAWING THE REFERENCE

Plaintiffs do not seriously contest that the K5 Defendants have demanded a jury trial or that they would be entitled to one. *See* Opp'n 13; Mot. 10–14. While Plaintiffs acknowledge that factor weighs in favor of withdrawal, Opp'n 14, Plaintiffs argue that "a district court is not

compelled to withdraw a reference *simply* because a party is entitled to a jury trial." Opp'n 13 (quoting *In re Am. Classic Voyages Co.*, 337 B.R. 509, 509 (D. Del. 2006)) (emphasis added).

The K5 Defendants, however, have not sought to withdraw the reference "simply" because they are entitled to a jury trial, but also because the Bankruptcy Court lacks constitutional authority to finally decide any issues in this case. Where there has been a jury demand in a proceeding that a bankruptcy court lacks authority to adjudicate, "courts generally find that judicial economy would be served by withdrawal of the reference." *In re NDEP Corp.*, 203 B.R. at 913; *see also Hatzel & Buehler, Inc. v. Orange & Rockland Utils., Inc.*, 107 B.R. 34, 40 (D. Del. 1989).

That approach makes sense. When the only basis for withdrawal of the reference is a jury demand, some courts have deferred withdrawal until the case is likely to reach trial. *But see In re U.S.A. Floral Prods, Inc.*, 2005 WL 3657096, at *2 (finding where defendants are entitled to a jury trial, it would be more efficient for the Article III court to manage the case through the pretrial process). But where the bankruptcy court lacks authority to render a final judgment, considerations of efficiency, judicial economy, and uniformity counsel strongly in favor of withdrawing the reference at the outset, so that key decisions need not be relitigated *de novo* before a different court. *See, e.g.*, *Orion Pictures Corp. v. Showtime Network*, 4 F.3d 1095, 1101 (2d Cir. 1993) ("The threshold core/non-core evaluation also determines the relevance of parties' jury trial rights to deciding a motion to withdraw the reference.").[3]

Plaintiffs ignore authority from this Court emphasizing that where a party who has not filed a proof of claim is entitled to a jury trial *and* the Bankruptcy Court lacks authority to enter a final judgment, strong cause exists to withdraw the reference. *See, e.g.*, *In re NDEP Corp.*, 203 B.R. at

---

[3] Although *Orion Pictures* focused on the core/non-core distinction, post-*Stern* decisions applying *Orion* recognize that inquiry must now also focus on whether a bankruptcy court has constitutional authority to enter a final judgment. *See Dynegy Danskammer, L.L.C.*, 905 F. Supp. 2d at 530.

7

913. Plaintiffs instead point to this Court's recent decision in *In re TZEW Holdco LLC*, 2023 WL 2663047 (D. Del. Mar. 28, 2023). But in that very different case, the movant argued that his right to a jury trial, *standing alone*, constituted cause to withdraw the reference. *Id.* at *2. The movant also agreed that all pretrial matters should be heard and decided by the bankruptcy court. *Id.* In that context, this Court understandably held that the movant's "potential entitlement [to a jury trial] at some future date is not sufficient grounds to withdraw the reference at this time." *Id.* In contrast, any pre-trial matters heard by the Bankruptcy Court here would need to be decided *de novo* by this Court. In this context, judicial economy and efficiency weigh heavily in favor of withdrawal.

While Plaintiffs rely on the three-factor test that this Court applied in *In re TZEW Holdco LLC*, that test evaluates "whether to withdraw a case from the bankruptcy court *based on a jury demand*," *id.* at *3 (emphasis added); it does not govern where, like here, a party seeks to withdraw the reference in a matter where the Bankruptcy Court lacks authority to issue a final judgment.[4]

## III. THE *PRUITT* FACTORS FAVOR WITHDRAWAL OF THE REFERENCE

Where a party is entitled to a jury trial and the bankruptcy court lacks authority to hear and determine the matter at hand, the *Pruitt* factors weigh strongly in favor of withdrawing the reference. *See, e.g.*, *In re NDEP Corp.*, 203 B.R. at 913. Because Plaintiffs wrongly assume the Bankruptcy Court can enter a final judgment, they fail to respond to the K5 Defendants' arguments for why the *Pruitt* factors favor withdrawal of the reference.

---

[4] Plaintiffs argue that the those factors would favor delaying withdrawal because there is "much work remaining to be done before trial." Opp'n 14–16. But it makes little sense for that work to be overseen by the Bankruptcy Court only to be considered *de novo* by this Court. The Bankruptcy Court's purported familiarity with the Debtors' pending Chapter 11 cases and adjudication of "other adversary proceedings involving similar facts" are vastly overstated and are not cause for delay. Opp'n 15. Plaintiffs' claims largely turn on factual inquiries that are unique to this action. *See* Mot. 6–7. No other adversary proceeding involves inquiries into whether Plaintiffs "receive[d] reasonably equivalent value in exchange for the K5 Transfer" or Kives's and Baum's knowledge of or intent with regard to that transaction. *Id.* (collecting citations from Complaint).

*First*, retention of the proceeding will not promote the uniformity of bankruptcy administration. Because the Bankruptcy Court cannot enter a final judgment in this case, this Court must make its own *de novo* factual and legal findings. Moreover, the claims at issue here are quintessentially common law suits turning on factual inquiries unique to this adversary proceeding, and on which the Bankruptcy Court has not devoted substantial time. Accordingly, this case is not similar to those on which Plaintiffs rely. *See, e.g.*, Opp'n 17 (citing case in which bankruptcy court presided over 13 adversary proceedings involving the same events and claims).[5]

*Second*, withdrawing the reference will not promote forum shopping. Plaintiffs do not identify any evidence that the K5 Defendants seek to withdraw the reference because they expect this Court to be more hospitable. Rather, the K5 Defendants simply seek to place this case under the supervision of the court that is obligated to oversee any trial and enter final judgment—which would promote efficiency, expedite resolution of this matter, and save party and judicial resources.

*Third*, withdrawing the reference would save party and judicial resources. Numerous courts have recognized that it would "constitute a tremendous waste of judicial resources to permit the bankruptcy judge to continue to maintain jurisdiction" where a district court must reconsider any fact or legal determinations *de novo*. *See* Mot. 26 (collecting cases). As those cases recognize, declining to withdraw the reference will not "foster the economical use of the parties' resources." *In re U.S.A. Floral Prods., Inc.*, 2005 WL 3657096, at *2. Plaintiffs rely on cases in which the bankruptcy court has "extensive familiarity with parties, issues, and events . . . that form the basis for the[] causes of action" in the complaint. *In re AgFeed USA, LLC*, 565 B.R. 556, 565 (D. Del.

---

[5] Even were Plaintiffs correct that the Bankruptcy Court has constitutional authority to resolve Plaintiffs' fraudulent and preferential transfer claims (they are not), this factor would still weigh in favor of withdrawal because Plaintiffs' state and foreign law claims are non-core claims that the Bankruptcy Court lacks authority to decide—raising the risk of non-uniform findings with mixed standards of review.

9

2016). That is not the case here. The Bankruptcy Court has not even received completed briefing on a motion to dismiss. And as the K5 Defendants have explained, many of the principal factual issues in this case are unique to this adversary proceeding.

*Fourth*, declining to withdraw the reference would slow, rather than expedite, the bankruptcy process. Plaintiffs' argument to the contrary is pure *ipse dixit*. This Court has emphasized the efficiency of eliminating a round of appeals by skipping straight to the District Court and the benefit of withdrawing the reference to "avoid expending resources on collateral litigation to determine whether the Bankruptcy Court was able to enter final judgments in accordance with *Stern*." *In re Appleseed's Intermediate Holdings*, 2011 WL 6293251, at *3 (D. Del. Dec. 15, 2011). The same considerations weigh in favor of withdrawing the reference here.[6]

*Finally*, it is undisputed that the K5 Defendants' motion is timely. That too weighs in favor of withdrawal. *See In re Elk Petroleum, Inc.*, 2022 WL 4355285, at *5 (D. Del. Sept. 20, 2022).

On balance, Plaintiffs ignore that when, as here, an Article III court must oversee any jury trial and enter any final decision in a case, the considerations of judicial economy and efficiency addressed by the *Pruitt* factors weigh strongly in favor of withdrawal of the reference.

## CONCLUSION

For the foregoing reasons, Defendants' motion should be granted.

---

[6] Plaintiffs suggest *Appleseed's* was superseded by a 2018 decision in which the Third Circuit addressed *Stern*'s discussion of "the Bankruptcy Court's authority 'to enter a final judgment on core proceedings.'" Opp'n 20 (quoting *In re Tribune Media Co.*, 902 F.3d 384, 393 (3d Cir. 2018)). But *Stern* was addressing *statutory* authority (as *In Tribune Media Co.* likely intended, given that was the focus of the subsection at issue). Indeed, the Third Circuit has since clarified, relying on *Stern*, that bankruptcy courts *cannot* enter final judgment on all core proceedings. *See In re Millennium Lab Holdings II, LLC*, 945 F.3d 126, 135 (3d Cir. 2019) ("[B]ankruptcy courts may violate Article III even while acting within their statutory authority in 'core' matters.").

Dated:  October 13, 2023
Wilmington, Delaware

Respectfully submitted,

**POTTER ANDERSON & CORROON LLP**

*/s/ Jeremy W. Ryan*
Jeremy W. Ryan (No. 4057)
Kevin R. Shannon (No. 3137)
Andrew L. Brown (No. 6766)
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
E-mail: jryan@potteranderson.com
          kshannon@potteranderson.com
          abrown@potteranderson.com

-and-

**LATHAM & WATKINS LLP**
James E. Brandt (admitted *pro hac vice*)
Suzzanne Uhland (admitted *pro hac vice*)
Hugh Murtagh (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: james.brandt@lw.com
        suzzanne.uhland@lw.com
        hugh.murtagh@lw.com

Michael J. Reiss (admitted *pro hac vice*)
355 S. Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email: michael.reiss@lw.com

Michael E. Bern (admitted *pro hac vice*)
555 11th St. NW
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: michael.bern@lw.com

*Attorneys for K5 Defendants Michael Kives, Bryan Baum, K5 Global Holdings, LLC, K5 Global Technology, LLC, MBK Capital, LP - Series T, K5 Global Growth Co-Invest I GP, LLC, K5 Global Growth Fund I GP, LLC, K5 Global Ventures, LLC, Mount Olympus Capital, LP, Mount Olympus Capital, LLC, K5 Global Growth Fund II, LP, K5 Global Growth Fund II GP, LLC, K5X Fund I, LP, and K5X Fund I, LLC*