IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE FTX TRADING LTD., *et al.*, | : | Chapter 11 |
| | : | Bankr. Case No. 22-11068-JTD |
| Debtors. | : | (Jointly Administered) |
| | : | |
| —————————————————— | : | |
| | : | |
| ALAMEDA RESEARCH LTD. and | : | Adv. Proc. No. 23-50411-JTD |
| CLIFTON BAY INVESTMENTS LLC | : | |
| f/k/a ALAMEDA RESEARCH VENTURES LLC, | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| MICHAEL KIVES, *et al.*, | : | |
| | : | Civ. No. 23-915-GBW |
| Defendants. | : | |

## **MEMORANDUM**

Before the Court is the motion (D.I. 1) ("Motion") of the K5 Defendants,[1] defendants in the above-captioned adversary proceeding ("Adversary Proceeding")[2] currently pending in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"), seeking an order withdrawing reference of the Adversary Proceeding, pursuant to 28 U.S.C. § 157(d). Plaintiffs are Alameda Research Ltd. and Clifton Bay Investments LLC f/k/a Alameda Research Ventures LLC (together, the "Plaintiffs"), debtors in the above captioned Chapter 11 cases.

---

[1] The K5 Defendants are Michael Kives, Bryan Baum, K5 Global Holdings, LLC, K5 Global Technology, LLC, MBK Capital, LP – Series T, K5 Global Growth Co-Invest I GP, LLC, K5 Global Growth Fund I GP, LLC, K5 Global Ventures, LLC, Mount Olympus Capital, LP, Mount Olympus Capital, LLC, K5 Global Growth Fund II, LP, K5 Global Growth Fund II GP, LLC, K5X Fund I, LP, and K5X Fund I, LLC.
[2] The docket of the Adversary Proceeding, captioned *Alameda Research Ltd. et al., v. Kives, et al.*, Adv. No. 23-50411-JTD (Bankr. D. Del.), is cited herein as "Adv. D.I. __," and the docket of the chapter 11 cases is cited herein as "Bankr. D.I. __."

1

Plaintiffs oppose the Motion (D.I. 4) ("Opposition"), and the Motion is fully briefed.[3] (D.I. 1, 4, 5, 6). For the reasons set forth herein, the Motion is denied without prejudice to the K5 Defendants' right to request withdrawal of the reference at such time as the proceeding is ready for trial.

## I. BACKGROUND

This dispute arises in the Chapter 11 cases of FTX Trading Ltd. and certain affiliates ("Debtors"). Pursuant to the complaint (Adv. D.I. 1 (the "Complaint")), Debtors seek to recover approximately $700 million in transfers made by individuals who ran the FTX Group (referred to in the Complaint as the "FTX Insiders"), including Samuel Bankman-Fried ("SBF"), to the K5 Group, a venture capital firm controlled by K5 Defendants Michael Kives and Bryan Baum. Although Debtors brought various federal, state, and foreign law claims, they principally allege that their investment in K5 Global amounted to a fraudulent transfer for which they did not receive reasonably equivalent value, and assert that their investment should be clawed back for the benefit of the bankruptcy estates. (*See id.*) Specifically, Debtors assert sixteen causes of action, twelve of which seek to avoid the transaction with the K5 Defendants on the theory that it was a fraudulent or preferential transfer under federal or Delaware law. (*Id.* ¶¶ 102–64). The Complaint also alleges that Kives and Baum aided and abetted SBF's breaches of fiduciary duty under British Virgin Islands and Delaware law, respectively. (*Id.* ¶¶ 165–74).

On August 21, 2023, the K5 Defendants, who have filed no claims against the estate and are not creditors of the estate, filed the Motion seeking withdrawal of the reference of the entire Adversary Proceeding. On September 11, 2023, the K5 Defendants filed a motion to stay the

---

[3] The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

2

Adversary Proceeding (Adv. D.I. 38) ("Motion to Stay"), pending the confirmation of a chapter 11 plan. The Motion to Stay argues that this costly litigation "should be deferred" until after the parties are able "to consider fully whether an out-of-court resolution could be reached." (*Id.* at 1-2). Briefing on the Motion to Stay was complete on October 16, 2023 (Adv. D.I. 57), and the matter is *sub judice*. On September 11, 2023, the K5 Defendants also filed with the Bankruptcy Court a 42-page motion to dismiss the Adversary Proceeding (Adv. D.I. 32) ("Motion to Dismiss"). Briefing on the Motion to Dismiss was only just completed on December 18, 2023, and the matter is *sub judice*. (Adv. D.I. 71).

## II. JURISDICTION AND STANDARDS OF REVIEW

District courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Pursuant to the authority granted by 28 U.S.C. § 157(a), this Court refers cases arising under title 11 to the United States Bankruptcy Court for the District of Delaware. *See* Am. Standing Order of Reference, Feb. 29, 2012 (C.J. Sleet). Federal law provides two bases for withdrawing that reference: mandatory withdrawal and permissive withdrawal. 28 U.S.C § 157(d). Mandatory withdrawal is not at issue here. "Permissive withdrawal allows "any case or proceeding" to be withdrawn "in whole or in part . . . on the [district court's] own motion or on timely motion of any party, *for cause shown.*" *Id.* (emphasis added).

"Proceedings should not be withdrawn for the sole reason that they are non-core." *Hatzel & Buehler, Inc. v. Cent. Hudson Gas & Elec. Corp.*, 106 B.R. 367, 371 (D. Del. 1989). Indeed, "[t]he 'cause shown' requirement in section 157(d) creates a presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy." *Id.* "This observation makes sense in light of the fact that one of the functions of section

3

157(d) is to insulate the grant of jurisdiction to the bankruptcy courts from successful constitutional attack." *Id.* To overcome that presumption, the moving party has the burden to prove that cause exists to withdraw the reference. *See In re NDEP Corp.*, 203 B.R. 905, 907 (D. Del. 1996).

As noted by the Third Circuit, "cause" to withdraw the reference "will be present in only a narrow set of circumstances." *In re Pruitt*, 910 F.2d 1160, 1171 (3d Cir. 1990) (internal quotation marks and citations omitted). Although the statute does not define "cause shown," the Third Circuit has set forth five factors that should be considered in determining whether cause exists to withdraw the reference: (1) promoting uniformity in bankruptcy administration, (2) reducing forum shopping and confusion, (3) fostering the economical use of the debtors' and creditors' resources, (4) expediting the bankruptcy process, and (5) the timing of the request for withdrawal. *See id.* at 1168 (discussing non-exhaustive list of factors). Other factors considered by courts analyzing whether withdrawal is appropriate are whether the claim is a core bankruptcy proceeding or whether it is non-core, and whether the parties have requested a jury trial.

### III. PARTIES' CONTENTIONS

The K5 Defendants' primary argument is that, in absence of its consent to jurisdiction, the Bankruptcy Court "lack[s] constitutional authority to enter judgment on a fraudulent transfer claim against a non-creditor." (D.I. 1-1 at 23). Because they have the right to a jury trial on those claims before an Article III court, K5 Defendants argue, the Adversary Proceeding ultimately will end up before this Court, and thus withdrawing the reference now will serve judicial economy. (*See id.* at 2) Further, "Because Plaintiffs' claims are "quintessentially common-law suits" that require Plaintiffs to prove facts particular to the K5 Transaction, there is little efficiency or benefit to requiring the parties first to try those issues as part of the sprawling

4

proceedings in Bankruptcy Court, and then repeat the process a second time in this Court." (*Id.* at 10).

Conversely, Debtors cite § 157(b), which provides an illustrative list of proceedings considered "core" matters to be adjudicated by the Bankruptcy Court, and which provides that "Proceedings to determine, avoid, or recover preferences" and "proceedings to determine, avoid, or recover fraudulent conveyances" are quintessential "core proceedings." 28 U.S.C. § 157(b)(2)(F), (H). Debtors urge the Court to reject the K5 Defendants' argument that—despite the plain language of § 157(b)—"the Bankruptcy Court lacks constitutional authority to resolve the [Debtors'] fraudulent and preferential transfer claims against the non-creditor K5 Defendants." (D.I. 1-1 at 22). According to the Debtors, this argument is not supported by the law of this Circuit and implicitly asks this Court to "take the extraordinary step of finding 28 U.S.C. § 157(b)(2) unconstitutional." (D.I. 4 at 8-9). Moreover, Debtors assert, the K5 Defendants have failed to demonstrate that withdrawal of the reference at this preliminary stage of the litigation will serve the purpose of judicial economy and efficiency underlying the *Pruitt* factors, such as promoting uniformity in bankruptcy administration and fostering the economical use of the Debtors' and creditors' resources.

IV.   **ANALYSIS**

A consideration of the applicable factors weighs against withdrawing the reference of the Adversary Proceeding at this preliminary stage.

A.   **Whether the Debtors' Claims Are Core**

First, even if certain claims are not "core" proceedings, that is not a sufficient basis for withdrawal of the reference. *In re AgFeed USA, LLC*, 565 B.R. 556, 564 (D. Del. 2016) ("[T]he mere fact the Complaint asserts non-core claims does not mandate withdrawal."). "Proceedings

5

should not be withdrawn for the sole reason that they are non-core." *Hatzel & Buehler,* 106 B.R. at 371. "In non-core proceedings, the bankruptcy court is given the power to submit proposed findings of fact and conclusions of law to the district court. Indeed, permitting the Bankruptcy Court to oversee pretrial matters . . . , and withdrawing it only when it is ripe for a jury trial, promotes judicial economy and a timely resolution of [a] case." *In re LTC Holdings*, 2019 WL 4643801, at *5 (D. Del. Sept. 24, 2019) (quoting AgFeed, 565 B.R. at 564). Courts have recognized the potential drawbacks to this so-called "two-tiered court review," but have not found such concerns substantial enough to warrant withdrawal: "Should the matter indeed proceed to trial, the Court recognizes that this resolution will have drawbacks. The Bankruptcy Court will not be able to enter a final judgment as to the non-core claims and must issue proposed findings of fact and conclusions of law." *AgFeed,* 565 B.R. at 564 (citing 28 U.S.C. § 157(c)). As the Court has previously observed, however, "the complex framework of bankruptcy jurisdiction and the accompanying constitutional limitations may make such a result unavoidable." *Id.* (citing *SNMP Research Int'l, Inc. v. Nortel Networks Int'l, Inc. (In re Nortel Networks, Inc.)*, 539 B.R. 704, 712 (D. Del. 2015)).

B.   **Request for Jury Trial**

Second, even if the K5 Defendants are entitled to a trial by jury, they have shown no reason why their refusal to consent to a jury trial before the Bankruptcy Court requires that the reference be withdrawn *now*, rather than when the Adversary Proceeding is ready for trial. Although assertion of a right to jury trial coupled with refusal to consent to such trial before the bankruptcy court is not "itself sufficient cause for discretionary withdrawal," it is one of the factors the Court considers. *See In re the IT Group, Inc.*, 2007 WL 211179 at *1-2 (D. Del. Jan. 26, 2007). "Withdrawal of the reference ... depends on particular circumstances of each case,

including whether the case is likely to reach trial" but generally "such a right [to jury trial] does not compel withdrawing the reference until the case is ready to proceed to trial." *In re Formica Corp.*, 305 B.R. 147, 150 (S.D.N.Y. 2004); *see also In re Ames Dep't Stores*, 190 B.R. 157, 162-63 (S.D.N.Y. 1995). In deciding whether to withdraw a case from the bankruptcy court based on a jury demand, courts consider (1) whether the case is likely to reach trial; (2) whether protracted discovery with court oversight will be required; and (3) whether the bankruptcy court is familiar with the issues presented. *In re Enron Corp.*, 317 B.R. 232, 235 (S.D.N.Y. 2004).

Here, the preliminary stage of the Adversary Proceeding, together with the K5 Defendants' multiple pending requests citing broader issues in the Chapter 11 cases, weigh against withdrawal of the reference of the Adversary Proceeding at this stage. The case remains in the early stages of litigation. The docket of the Adversary Proceeding reflects that discovery just began in November, and that the Motion to Stay the litigation entirely remains pending. Indeed, under the current scheduling order, motions for summary judgment will not be fully briefed until May 23, 2025. (*See* Adv. D.I. 28 at 3). With respect to whether the case is likely to reach trial, a 42-page Motion to Dismiss the Adversary Proceeding also remains pending. (Adv. D.I. 32). It is unclear what claims may survive the Motion to Dismiss or summary judgment motions, if any. Additionally, the K5 Defendants have told the Bankruptcy Court repeatedly that they are eager to avoid litigation. The Motion to Stay asserts that this "costly litigation" should be deferred until after the parties are "able to consider fully whether an out-of-court resolution could be reached."[4]

---

[4] *See also* Adv. D.I. 38 at 5 ("[T]he K5 Defendants have made clear that, upon the Plaintiffs obtaining [the order to acquire SGN Albany Capital LLC's interests from the K5 and Mount Olympus Transactions], they would assist in maximizing the value of the investments for the benefit of the estates, and assist in monetizing them if desired and appropriate"); *id.* at 15 ("Prior

7

With respect to whether discovery oversight will be required, it is clear that significant discovery will be required to adjudicate the Complaint, which asserts 14 claims against the K5 Defendants, including taking up to 20 depositions as permitted by the Scheduling Order. Additionally, the K5 Defendants' Motion to Stay points to several broader discovery issues in the Chapter 11 cases, and these issues also weigh in favor of allowing the Bankruptcy Court to continue its oversight over the Adversary Proceeding. Specifically, K5 Defendants point to "potentially pivotal facts underlying [the Debtors'] claims" which "continue to rapidly evolve" and which "underscores that litigation premised on those facts is overwhelming premature" (D.I. 1-1 at 3-5); the appeal of the Bankruptcy Court's denial of appointment of an examiner, which is currently pending the Third Circuit, and which, if successful, could cause duplicative discovery efforts" (*id*. at 5); and "events in the broader bankruptcy proceeding" including that "critical witnesses to this dispute are unavailable due to upcoming criminal trials" (*id*.). The Court will not withdraw the reference under such facts and circumstances before the Bankruptcy Court has the opportunity to rule on whether the Adversary Proceeding should indeed be stayed entirely.

Finally, it is clear that the Bankruptcy Court is familiar with the issues presented. The Bankruptcy Court has presided over the Debtors' Chapter 11 cases for over a year, and those cases have been described as the result of an "unprecedented situation" involving nearly 100 corporate entities stemming from a "complete failure of corporate controls" and a "complete absence of trustworthy financial information." (Bankr. D.I. 24 at ¶ 5). The docket further reflects that the Bankruptcy Court is adjudicating a number of other adversary proceedings with similar facts. The Bankruptcy Court is, therefore, best suited to adjudicate pretrial motions and discovery disputes.

---

to filing [the Motion to Stay], the K5 Defendants asked Plaintiffs to stipulate to a stay *so that discussions could proceed without continued litigation*.") (emphasis added).)

8

*See In re LTC Holdings*, 2019 WL 4643801, at *8 ("The parties' resources … are likely better served by the Bankruptcy Court's retention of the Adversary Proceeding based on its familiarity with the underlying facts and issues").

The Court concludes that it would be "premature to withdraw the reference to the bankruptcy court based upon the unfixed proposition that a jury trial may occur in the future." *In re Big V Holding Corp.,* 2002 WL 1482392, at *5 (D. Del. July 11, 2002). "Even when a district court must ultimately preside over a trial by jury, there is no reason why the Bankruptcy Court may not preside over an adversary proceeding and adjudicate discovery disputes and motions only until such time as the case is ready for trial." *General Elec. Capital Corp. v. Teo,* 2001 WL 1715777, at *4 (D. N.J. Dec. 14, 2001) (citations and quotations omitted). Where, as here, a case is in the early stages with unresolved pre-trial matters, including discovery, "one can only speculate when it will proceed to trial, if at all." *Enron*, 317 B.R. at 235. As such, judicial economy favors denial of the Motion, and the K5 Defendants' assertion of entitlement to a jury trial does not alter this conclusion.

    **C.**    **The *Pruitt* Factors Do Not Support Withdrawal**

Third, for many of the same reasons discussed above, consideration of the *Pruitt* factors does not support withdrawal of the reference at this time. First, withdrawal of the reference now will not promote uniformity in the administration of the Chapter 11 cases. The docket reflects that the Debtors have filed numerous adversary proceedings, with related allegations that inevitably will be subject to dispute by multiple defendants in multiple actions, including among other, things, (i) that former insiders of the Debtors removed or concealed Debtor assets, and (ii) that the Debtors were insolvent at various times. Indeed, the K5 Defendants' Motion to Dismiss argues that the Debtors were insolvent as of the Petition Date. (Adv. D.I. 33 at 35). Because the Bankruptcy

Court will decide allegations common to all adversary proceedings, allowing the Bankruptcy Court to continue hearing the Adversary Proceeding eliminates the risk of inconsistent findings between the cases and therefore promotes uniformity in the administration of the chapter 11 cases. With respect to forum shopping, the Bankruptcy Court is the appropriate forum where, as here, most claims arise under the Bankruptcy Code or analogous Delaware statutes. With respect to expediting the bankruptcy process, the Court must reject the K5 Defendants' assertion that "forcing the Bankruptcy Court to oversee this action would slow down the process and delay ultimate resolution of the chapter 11 proceedings," (D.I. 1-1 at 33) in light of the foregoing discussion and the K5 Defendants' Motion to Stay the litigation entirely. With respect to fostering the economical use of the Debtors' and creditors' resources, the Bankruptcy Court has presided over the Chapter 11 cases for over a year and is familiar with the core facts and legal issues of the Adversary Proceeding. It makes little sense for this Court to wade into the Chapter 11 cases at this early stage, especially in light of the concerns highlighted by the K5 Defendants in the Motion to Stay. Finally, with respect to timeliness, Congress has mandated that a party seeking to withdraw a proceeding from a bankruptcy court to a district court can do so only upon the filing of a "timely" motion. 28 U.S.C. § 157(d). Section 157, however, does not define what the court should consider timely. *See id.*; *see also In re Allegheny Health Educ. and Research Foundation*, 2006 WL 3843572, *2 (W.D. Pa. Dec. 19, 2006). "A § 157(d) motion is timely if it is filed at the first reasonable opportunity after the movant has notice of the grounds for removal, taking into consideration the circumstances of the proceeding." *In re Schlein*, 188 B.R. 13, 14 (E.D. Pa. 1995). Timeliness is "measured by the stage of the proceedings in the Bankruptcy Court." *In re U.S.A. Floral Products, Inc.*, 2005 WL 3657096, at *1 (D. Del. July 1, 2005) (internal quotation marks omitted). "The purpose of the timeliness provision is to prevent unnecessary delay and stalling

tactics." *Schlein*, 188 B.R. at 15. As the case is in its early stages of litigation and little discovery has been taken, the K5 Defendants' Motion was timely made. This factor does not weigh against permissive withdrawal, but is outweighed by the other factors discussed herein.

The Court does not find cause to grant the K5 Defendants' Motion at this time. The arguments presented by the K5 Defendants present no contravening policy to rebut the presumption that permitting the Bankruptcy Court to oversee pretrial matters in this proceeding, and withdrawing the reference only when it is ready for a trial, will promote judicial economy and a timely resolution of this case.

## V.   CONCLUSION

For the reasons explained above, the Court will deny the Motion without prejudice to the K5 Defendants' right to move for withdrawal of the reference at such time as it is ready for trial. A separate Order will be entered.

January 2, 2023

UNITED STATES DISTRICT JUDGE

11